UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA C. MARTINEZ, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>　　　　　　　　　　Defendant. | Case No.: 25-cv-01213-AJB-DDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY FEES, COSTS, AND EXPENSES**<br><br>**(Doc. No. 18)** |

　　　　Before the Court is a motion for attorney fees, costs, and expenses filed by Plaintiffs Angela C. Martinez and Katy Martinez ("the Martinezes"). (Doc. No. 18.) The Martinezes seek a total of $18,710.50 consisting of (1) $14,205.00 in fees incurred at the time of the motion, (2) $505.50 in costs, and (3) $4,000.00 in anticipated fees for submitting a reply and attending a hearing on the motion. (*Id.*) The motion is fully briefed. (Doc. Nos. 18, 21, 22.) Pursuant to Local Civil Rule 7.1.d.1, the Court finds this matter suitable for disposition without oral argument.

　　　　For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the Martinezes' motion and awards the Martinezes $7,220.50 in fees and costs.

## I. BACKGROUND

### A. Factual Background

On April 17, 2019, the Martinezes purchased a 2019 Ford Escape. (Doc. No. 1-2 at 5 ¶ 8.[1]) Between 2021 and 2024, the Martinezes began to encounter various issues with the vehicle, including "abnormal noise" and "black smoke" being emitted from the engine compartment, a malfunctioning "SYNC system," "excessive shaking," and "a failure to accelerate." (*Id.* 5–6 ¶¶ 11–15.) In November 2024, the Martinezes "request[ed] a resolution from the manufacturer," Defendant Ford Motor Company ("Ford"). (Doc. No. 21-2 at 2.)

On December 2, 2024, Ford requested additional information from the Martinezes. (Doc. No. 21-3 at 2.) After receiving the requested information, on December 10, 2024, Ford requested more information so that it could purchase the vehicle from the Martinezes. (Doc. No. 21-4 at 2–3.) The Martinezes do not dispute that they never responded to Ford's second request. (*Compare* Doc. No. 21 at 7 ("Plaintiffs never responded."), *with* Doc. No. 22.)

### B. Procedural Background

On January 30, 2025, the Martinezes initiated this action in San Diego County Superior Court. (Doc. No. 1-2.)

On May 12, 2025, Ford removed the action to this Court. (Doc. No. 1.) The parties disputed whether the removal was timely and proper. (*Compare id.* ¶¶ 4–6, *with* Doc. No. 6.)

On June 3, 2025, Ford offered the Martinezes judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure. (Doc. No. 21-6; *see also* Doc No. 18-1 ¶ 49.)

On July 1, 2025, during an early neutral evaluation before Magistrate Judge David D. Leshner, the parties reached an agreement to settle. (Doc. No. 12.) The settlement

---

[1] Page citations refer to the pagination generated by the Case Management/Electronic Case Files system.

apparently entailed Ford reopening its Rule 68 offer and the Martinezes accepting it. (*See* Doc. No. 21-1 ¶ 12.) The parties did not agree on the amount of attorney fees incurred, however. (Doc. No. 12.)

On July 3, 2025, the Martinezes accepted the reopened Rule 68 offer. (Doc. No. 21-6 at 4.)

On September 23, 2025, the Martinezes filed the present motion for fees. (Doc. No. 18.)

## II. Legal Standard

Under California's Song-Beverly Act, a prevailing buyer is entitled "to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d).

The Song-Beverly Act "requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable." *Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (Cal. Ct. App. 1994). The court may consider "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved." *Id.* If the court finds the time expended or fee request is "not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount." *Id.* "A prevailing buyer has the burden of showing that the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount.'" *Id.* (quoting *Levy v. Toyota Motor Sales, U.S.A., Inc.*, 4 Cal. App. 4th 807, 816 (Cal. Ct. App. 1992)) (internal quotation marks omitted); *see also Goglin v. BMW of N. Am., LLC*, 4 Cal. App. 5th 462, 470 (Cal. Ct. App. 2016) (same). If a fee request is opposed, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Premier Med. Mgmt. Sys. v. Cal. Ins. Guar. Assoc.*, 163 Cal. App. 4th 550, 564 (2008).

Rather, the opposing party has the burden to demonstrate the hours spent are duplicative or excessive. *Id.*

## III. Discussion

### A. Local Civil Rule 2.1.

Before turning to the merits of the present motion, the Court reminds the parties and their counsel of their duties to one another under Local Civil Rule 2.1.3.

This short-lived litigation has been contentious, with each party's counsel asserting that the opposing party and their counsel are acting in bad faith. For example, in their motion for remand, the Martinezes' attorneys stated that motion was "based on Ford's deliberate misrepresentation of the timeliness of its removal." (Doc. No. 6 at 2.) In the present motion briefing, the Martinezes' counsel accuse Ford of intransigence, stating that "this action would not have been necessary in the first instance if [Ford] agreed to abide by its duties under the [Song-Beverly Act] by either affirmatively offering to repurchase Plaintiffs' vehicle, or at the very least by offering to repurchase Plaintiffs' vehicle pursuant to the [Song-Beverly Act] prior to filing this lawsuit." (Doc. No. 18 at 6.) Ford makes similar allegations, insisting, for example, that the Martinezes' counsel have engaged in "tactics designed exclusively to generate attorney fees, wasting the Court's time, and imposing a 'death-by-a-thousand-cuts' campaign against [Ford] *postured in compliance* with the law." (Doc. No. 21 at 10.)

This antagonistic behavior is neither helpful to the Court nor beneficial to the parties. "Although adversarial, the [litigation] experience does not have to, and should not, be antagonistic or hostile. Civility is paramount and not to be confused with weakness." Local Civ. R. 2.1a.1. "We expect lawyers to address legal arguments with other lawyers professionally, and not personally." *Id.* 2.1.a.3.a. "We expect lawyers to treat adverse . . . litigants and opposing counsel with courtesy, fairness and respect." *Id.* 2.1.a.3.b. "We expect lawyers to conduct themselves so that they may conclude each case amicably with the opposing party." *Id.* 2.1.a.3.m.

1  The Court hopes that, moving forward, the parties' counsel conduct themselves in
2  compliance with Local Civil Rule 2.1.

### B. The Martinezes are entitled to reduced fees.

Turning to the merits, the Martinezes seek a total of $18,710.50, or (1) $14,205.00 in attorney fees incurred by the time of this motion, (2) $505.50 in costs, and (3) $4,000 for fees incurred to submit a reply and attend a hearing on the present motion. (Doc. No. 18 at 18.) In support of their request, the Martinezes provide the Declaration of Kevin Jacobson and billing records from January 30, 2025, through September 22, 2025. (Doc. Nos. 18-1; 18-7.)

Ford opposes the Martinezes' request, arguing that the Court should deny the Martinezes any attorney fees because they are not prevailing parties and, alternatively, the requested fees are not reasonable. (Doc. No. 21 at 9–15.)

Contrary to Ford's argument, the Martinezes are prevailing parties. Nevertheless, Ford is correct that the Martinezes' requested fees are not reasonable.

### 1. The Martinezes are prevailing parties.

Under the Song-Beverly Act, a party is a "prevailing party if it is clear that the party has . . . achieved its main litigation objective." *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 150–51 (Cal. Ct. App. 2006) (quoting *Castro v. Sup. Ct.*, 116 Cal. App. 4th 1010, 1019–20 (Cal. Ct. App. 2004)).

The parties dispute whether the Martinezes have prevailed in this litigation. The Martinezes state that "[p]er [Ford's] admission, Plaintiffs are the prevailing party for the purposes of attorney fees." (Doc. No. 18 at 11.) The motion does not include any citation or exhibit demonstrating an admission. (*See generally id.*)

Ford responds that the Court should "infer that Plaintiffs' primary objective was to pursue that which was not already offered—restitution, a civil penalty, and prejudgment interest." (Doc. No. 21 at 9.) Ford adds that the Martinezes did not obtain this objective. (*Id.* at 9–10.)

The Martinezes reply that they prevailed because Ford's Rule 68 offer of judgment "unambiguously states 'In ruling in [*sic*] Plaintiffs' fee/cost motion(s)[...] the fees, expenses, and costs amount shall be calculated as if Plaintiffs were found to have prevailed in this action under section 1794(d) of the California Code of Civil Procedure[.]" (Doc. No. 22 at 5 (quoting Doc. No. 21-6 ¶ 2).)

Both parties are incorrect. First, there is no admission in the record that the Martinezes prevailed. Ford's offer of judgment simply states that any calculation of fees shall be made "*as if* Plaintiffs were found to have prevailed." (Doc. No. 21-6 ¶ 2 (emphasis added).) This framing indicates a hypothetical scenario. It is not an admission.

Second, nevertheless, the Martinezes prevailed because the Court finds that their main litigation objective was to obtain a resolution for the problems they had with their vehicle, which they received. Specifically, the Martinezes first contacted Ford "to request a resolution" of "the ongoing issues [they] have been facing with [their] 2019 Ford Escape." (Doc. No. 21-2 at 2.) The Martinezes subsequently initiated this action seeking multiple forms of relief, including the "rescission of the [vehicle] purchase contract and restitution of all monies expended." (Doc. No. 1-2 at 11 ¶ 2.) This is one of the remedies provided by the Song-Beverly Act. Cal. Civil Code §§ 1793.2(d)(2), 1794(b). It is also a resolution for the problems they had with their vehicle.

The Martinezes did not obtain this resolution before initiating this litigation. Ford contends that it made a "repurchase offer" to the Martinezes before they initiated this action, and so this litigation was not necessary for the Martinezes to obtain a resolution. (*See, e.g.*, Doc. No. 21 at 6.) That is not entirely accurate. Yes, Ford indicated that it intended to repurchase the vehicle from the Martinezes. (Doc. No. 21-4.) However, Ford did not make a repurchase offer before the Martinezes initiated this litigation. "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 271 (Cal. 2001) (citations omitted). Ford's December 10, 2024 letter simply requested additional information from the Martinezes. (*See* Doc. No. 21-4.)

It did not include any terms such that the Martinezes' assent to those terms would conclude a bargain. (*See id.*) In fact, the letter explained that the Martinezes would "have an opportunity to review the financial terms of Ford's repurchase, and [the Martinezes and Ford] can discuss any questions or concerns [the Martinezes] may have." (*Id.* at 2.)

The Court understands that the Martinezes did not respond to Ford's request. (*Compare* Doc. No. 21 at 7 ("Plaintiffs never responded."), *with* Doc. No. 22.) It may very well have been more prudent for the Martinezes to work with Ford to obtain a resolution without this action. Indeed, "[w]e expect lawyers to attempt to resolve disputes promptly, fairly and reasonably, with resort to the Court for judicial relief *only if necessary*." Local Civ. R. 2.1.a.2.f (emphasis added). That does not mean, however, that the Martinezes were precluded from obtaining such a resolution through litigation.

Thus, the Court concludes that the Martinezes achieved their main litigation objective and qualify as prevailing parties. *See Graciano*, 144 Cal. App. 4th at 150–51.

### 2. The Martinezes' requested attorney fees are unreasonable.

Because the Martinezes are prevailing parties, they are entitled to attorney fees and costs. Cal. Civ. Code § 1794(d). The Martinezes seek $18,205.00 in attorney fees and $505.50 in costs for a total of $18,710.50. (Doc. No. 18 at 18.) Ford does not dispute that the Martinezes are entitled to recover their costs if the Court finds that the Martinezes prevailed. (*See generally* Doc. No. 21 at 10–15.) The Court accordingly awards the Martinezes the requested $505.50 in costs. Instead, Ford argues that the Martinezes are only entitled to a reduced amount of fees. (*Id.*) Ford is correct.

#### a. The Martinezes' submitted billable hours are unreasonable.

The Martinezes submit records for attorney fees incurred between January 30, 2025, and September 22, 2025. (Doc. No. 18-7.) Although the Martinezes seek $4,000.00 for attorney fees they anticipate incurring for submitting a reply and attending a hearing on the present motion, they do not provide any records for fees incurred in submitting a reply. (*See generally* Doc. Nos. 22; 22-1.)

Ford raises three objections. First, Ford asserts that the Martinezes are not entitled to any fees incurred after Ford made its Rule 68 offer of judgment on June 3, 2025. (Doc. No. 21 at 10–11.) Second, Ford argues that the Martinezes are not entitled to fees incurred for their motion for remand. (*Id.* at 11.) Third, Ford contends that the time billed for the present fee motion is excessive. (*Id.* at 12.)

Ford correctly notes that the Martinezes are not entitled to a portion of the fees incurred after June 3, 2025. Pursuant to Rule 68(d) of the Federal Rules of Civil Procedure, "[i]f the judgment that [the Martinezes] finally obtain[] is not more favorable than the unaccepted offer, [the Martinezes] must pay the costs incurred after the offer was made." Here, Ford provided the Martinezes with a Rule 68 offer of judgment on June 3, 2025. (Doc. No. 21-6.) The offer limited the Martinezes' ability to seek fees and costs to those incurred "as of the date of th[e] date of the offer of judgment." (*Id.* ¶ 2.)

The Martinezes had 14 days to accept the offer. (*Id.* at 3.) The Martinezes did not accept the offer in that time. (*See* Doc. No. 18-1 ¶¶ 40–48 (providing the Martinezes' timeline of the litigation and lacking any evidence of accepting Ford's offer); *see also* Doc. No. 21-1 ¶¶ 11–12 (explaining the Ford "agreed to re-open the Rule 68 offer . . . without changing the date of issuance of the initial Rule 68 offer.").) The Martinezes ultimately accepted the reopened offer. (Doc. No. 21-6 at 4.) Because the Martinezes accepted the reopened offer, they did not obtain a final result that is "more favorable" than the previously unaccepted offer. Fed. R. Civ. P. 68(d).

The Martinezes do not dispute that their failure to accept the offer of judgment precludes them from seeking the bulk of the fees incurred after June 3, 2025. (*See* Doc. No. 22 at 9–11 (challenging Ford "tak[ing] issue with the 5.8 hours billed to draft a Motion to Remand" and Ford "tak[ing] issue with Plaintiffs' counsels' time spent on this [fee] Motion").) Accordingly, the Martinezes are not entitled to fees for the 10.5 hours of work performed between June 3, 2025, and August 25, 2025.

However, the Court notes that the offer of judgment authorized the Martinezes to "recover for fees and costs reasonably incurred in bringing . . . a fee/cost motion(s)." (Doc.

No. 26-6 ¶ 2.) The Court thus finds that the Martinezes' counsel are entitled to fees for the 6.7 hours of work performed in preparing the instant motion. (*Id.*)

The Martinezes are also entitled to some fees incurred in their counsels' preparation of the motion for remand. The Song-Beverly Act entitles prevailing parties to attorney fees that were "reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civil Code § 1794(d). In arguing that the Martinezes are not entitled to fees for their counsels' preparation of the motion for remand, Ford insists that the 5.8 hours of work billed "could have been done by one attorney," so the Court should exclude or reduce the time to that billed by one attorney. (Doc. No. 21 at 11.) Ford does not argue that the filing of the motion for remand was unreasonable "in connection with the . . . prosecution of [this] action." Cal. Civil Code § 1794(d). (*See generally* Doc. No. 21 at 11.) Because the Martinezes are not entitled to any fees incurred after June 3, 2025, the Court notes that the remaining time spent preparing the motion for remand consists of 0.2 hours by Mr. Jacobson on May 12, 2025; 1.2 hours by Mr. Treybig on May 12, 2025; and 3.4 hours by Mr. McIntire on May 30, 2025. (Doc. No. 18-7 at 3–4; *see also* Doc. No. 22 at 10 (identifying work done to prepare the motion for remand).) Although Ford is correct that the work could have been done by one attorney, Ford does not offer any evidence that any of the time spent on the motion for remand was duplicative or unreasonable. (*See* Doc. No. 21 at 11.) The Martinezes are thus entitled to fees for 4.8 hours of work performed to prepare the motion for remand. *See Premier Med.*, 163 Cal. App. 4th at 564.

The Martinezes are entitled to fees for 6.7 hours of work performed in preparing the fee motion. Ford contends that the time the Martinezes' counsel have expended on the present fee motion is excessive because "the present Motion must have been taken from a prior motion Plaintiffs' counsel previously used as Plaintiffs' counsel even left in and premised this motion on basis [*sic*] that Ford 'refused to offer a repurchase of Plaintiffs' vehicle' and that '[Ford] refused to abide by its obligations under the law.'" (Doc. No. 21 at 12.) Although Ford indicated that it intended to repurchase the vehicle, it did not make

a repurchase offer before the Martinezes initiated this action. (*See* Doc. No. 21-4.) Nor does Ford point to any case in which the Martinezes' counsel filed a similar motion such that the Court can discern that the present motion was "taken from a prior motion Plaintiffs' counsel previously used." (*See generally* Doc. No. 21 at 12.) The Court accordingly declines to conclude that the fee motion is recycled and reduce the time spent on the motion.

Ford also contends that the time opposing counsel spent on the motion is excessive because Mr. Treybig "clearly needs guidance on multiple occasions on this fee motion . . . and also bills for having strategy meetings with Mr. Jacobson." (*Id.*) However, the Martinezes do not seek fees for Mr. Jacobson's time spent advising Mr. Treybig and reviewing the fee motion. (Doc. No. 18-7 at 9.) It is thus not clear that the amount of time that Mr. Treybig spent on preparing the motion was duplicative or unreasonable. The Court therefore finds the Martinezes are entitled to the fees requested for preparing the fee motion.

Furthermore, because the Martinezes have not submitted any billing records to substantiate the amount of time their counsel spent on preparing the reply brief and because the Court is disposing of this matter without a hearing, their request for $4,000 for preparing a reply brief and to attend the now-vacated hearing is unreasonable. The request is accordingly denied.

In sum, the Court finds that the Martinezes' counsel reasonably expended the following hours in connection with the prosecution of this action:

| Attorney | Hours |
|---|---|
| Kevin Jacobson | 0.2 |
| Michael Jahangani | 0.6 |
| Gabriel McIntire | 3.4 |
| Erik Schmitt | 2.4 |
| Matthew Treybig | 12.8 |

b.      **The Martinezes' requested hourly rates are unreasonable.**

In seeking attorney fees, "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Generally, the "relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

The Martinezes request the following rates for their counsel:

| Attorney | Law School Graduation Year | California Bar Admission Year | Requested Hourly Rate |
|---|---|---|---|
| Kevin Jacobson (Partner) | 2017 | 2018 | $550[2] |
| Michael Jahangani (Assoc.) | 2023 | 2024 | $350[3] |
| Gabriel McIntire (Assoc.) | 2024 | 2025 | $375[4] |
| Erik Schmitt (Assoc.) | 2016 | 2017 | $475[5] |
| Matthew Treybig (Assoc.) | 2018 | 2021 | $500[6] |

---

[2] (Doc. No. 18-1 ¶¶ 3–11.) The Declaration of Kevin Jacobson does not identify when Mr. Jacobson graduated from law school or when he was admitted to the California Bar. (*See id.* ¶ 3.) Based on the Court's independent research, Mr. Jacobson was admitted to the California Bar in May 2018. Kevin Y. Jacobson #320532, The State Bar of California, https://perma.cc/G4TP-6MD5. The Court assumes for the purpose of resolving this Motion that Mr. Jacobson graduated from law school by December 2017.

[3] (Doc. No. 18-1 ¶¶ 18–19.)

[4] (Doc. No. 18-1 ¶¶ 16–17.) The Jacobson Declaration does not identify when Mr. McIntire was admitted to the California Bar. (*See id.*) Based on the Court's independent research, Mr. McIntire was admitted to the California Bar in May 2025. Gabriel Isaiah McIntire #361141, The State Bar of California, https://perma.cc/2CVY-H7WG.

[5] (Doc. No. 18-1 ¶¶ 12–13.) The Jacobson Declaration does not identify when Mr. Schmitt was admitted to the California Bar. (*See id.*) Based on the Court's independent research, Mr. Schmitt was admitted to the California Bar in February 2017. Erik Kronholm Schmitt #314285, The State Bar of California, https://perma.cc/C849-ZWAK.

[6] (Doc. No. 18-1 ¶¶ 14–15.)

(Doc. No. 18 at 14.) In support of these requested rates, the Martinezes offer two cases in the Southern District of California and the Declaration of Kevin Jacobson. (*Id.* (citing *Jurosky v. BMW of N. Am., LLC*, No. 19-cv-00706-JM-BGS, 2020 WL 5033584 (S.D. Cal. Aug. 25, 2020); Doc. No. 18-1); Doc. No. 22 at 7 (citing *Montero v. General Motors LLC*, No. 37-2022-00026373-CU-BC-CTL (Cal. Sup. Ct. Mar. 7, 2025)).) The Martinezes also offer a number of cases arising from the Central District of California. (*See* Doc. No. 18-1 ¶¶ 7–11, 13, 15, 17, 19.) Additionally, the Martinezes' counsel point out in reply that their rates are based on the Laffey Matrix. (Doc. No. 22 at 6 (citing The Laffey Matrix, Laffey Matrix, https://perma.cc/Y9Z9-44XT.)

Ford objects to the Martinezes' requested rates as excessive. (Doc. No. 21 at 13.) The Court agrees with Ford.

At the outset, the Court notes that the requested rates invite skepticism. For example, the Martinezes request a higher rate for Mr. Treybig even though he has *less* experience than Mr. Schmitt. (Doc. No. 18-1 ¶¶ 12–15.) The Martinezes similarly request a higher rate for Mr. McIntire even though he has *less* experience than Mr. Jahangani. (*Id.* ¶¶ 16–19.) The Martinezes' counsel do not offer any explanation for these inconsistencies. (*See generally* Doc. Nos. 18; 18-1 ¶¶ 12–19; 22.)

Setting aside the inconsistencies, the cases on which the Martinezes' counsel rely do not justify the requested rates. First, the Central District of California is not "the forum in which the [Court] sits." *Camacho*, 523 F.3d at 979. The Central District of California cases that the Martinezes' counsel point to consequently do not show that the requested rates are in line with prevailing rates in the Southern District of California. *See id.* Nor do the Martinezes offer any explanation for why the Court should not rely on reasonable rates within the Southern District of California. *Cf. id.* The Court thus declines to rely on the Central District of California cases and the rates they approve.

Second, the two Southern District of California cases the Martinezes identify present their own issues. Beginning with *Jurosky*, it does not appear that any of the Martinezes' attorneys were involved in that case. *See generally* 2020 WL 5033584 (identifying Anh

Nguyen, Gregory Sogoyan, Tionna Dolin, Kyle Raine Tracy, Payam Shahian, Christine J. Haw, Jacob William Cutler, Caitlin Scott, Michael Harris Rosenstein, and Dara Tabesh as the plaintiff's attorneys). Although the fee motion states that "Mr. Sogoyan was one of Plaintiff's [*sic*] counsel on this case," the Martinezes do not seek fees for any work performed by Mr. Sogoyan. (Doc. Nos. 18 at 16; 18-7.)

The Martinezes' counsel indicate that Mr. Sogoyan's prior rates constitute evidence of reasonable rates here. (*See, e.g.*, Doc. No. 18-1 ¶ 17 (identifying Mr. Sogoyan's approved rates of $350 and $385 per hour in *Jurosky*, 2020 WL 5033584)). But they do not present any evidence regarding Mr. Sogoyan's skill, experience, or reputation to allow the Court to evaluate whether Mr. Sogoyan is an appropriate point of comparison to any of the attorneys for whom they seek fees. *Cf. Blum*, 465 U.S. at 895 n.11 (requiring evidence "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation"). Courts "are not like pigs, hunting for truffles buried in briefs." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Further, "the Court is not obligated to paw over files . . . in order to make a party's claim." *Krause v. Nev. Mut. Ins. Co.*, No. 2:12-cv-00342-JCM-CWH, 2014 WL 99178, at *2 (D. Nev. Jan. 3, 2014). The Court thus declines to develop the Martinezes' counsels' incomplete argument.

As for *Montero*, the Martinezes' counsel indicate that the court there approved rates of $500 and $525 per hour for Mr. Jacobson, and $425 per hour for Mr. Treybig. (Doc. No. 22-1 ¶ 5.) But the decision they provide does not identify what hourly rates were approved. (*See generally* Doc. No. 22-4.) It merely states that "the Court will approve the hourly rates." (*Id.* at 3.) The Court therefore does not rely on *Montero* as evidence of reasonable rates for the Martinezes' counsel.

Relatedly, the Martinezes' counsels' reliance on the Laffey Matrix is misplaced. "The Laffey Matrix is based on rates for attorneys practicing federal litigation in the District of Columbia." Case Law, Laffey Matrix, https://perma.cc/YA4M-8TXA. But the

District of Columbia is not "the forum in which the [Court] sits" either. *Camacho*, 523 F.3d at 979. In fact, the Ninth Circuit has cautioned that "just because the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010).

Despite the dearth of reliable evidence of reasonable rates provided by the Martinezes' counsel, Ford indicates that the Court may look to publications like the Real Rate Report to determine reasonable rates. (Doc. No. 21 at 14 (citing *Nguyen v. BMW of N. Am., LLC*, No. 20-cv-02432-JLS-BLM, 2023 WL 173921 (S.D. Cal. Jan. 12, 2023)[7]).) The Martinezes' counsel appear to agree. (*See* Doc. No. 22 at 6 (citing approvingly rates Ford attributes to the 2021 Real Rate Report)[8].)

The Court agrees that the Real Rate Report provides reliable evidence of reasonable rates for the Southern District of California. The 2024 Real Rate Report identifies the following market rates for San Diego attorneys:

| Title | Years of Experience | First Quartile | Median | Third Quartile |
|---|---|---|---|---|
| Partner | Fewer Than 21 Years | $385 | $428 | $515 |
| Associate | 7 or More Years | $369 | $425 | $435 |
| Associate | Unspecified | $225 | $295 | $435 |

---

[7] The Court notes that Ford misreads *Nguyen*. The court there did not find that "the prevailing rate in basic lemon law matters for partners practicing in the same field in San Diego to be $557 per hour, and $425 per hour for associates." (Doc. No. 21 at 14.) Instead, the court stated that "[a]ccording to the 2021 Real Rate Report, the mean hourly rate for litigation partners in San Diego in 2021 was $557/hour, while the median rate was $425/hour." *Nguyen*, 2023 WL 173921 at *3 (citing Wolters Kluwer, *2021 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* 21 (2021) ("2021 Real Rate Report")). It added that "[t]he mean rate for litigation associates in San Diego was $254/hour, while the median was $175/hour." *Id.* (citing 2021 Real Rate Report at 22).

[8] Given Ford's misreading of *Nguyen*, the Martinezes' counsels' assertion that their rates are reasonable because they are in line with Ford's misreading is a house built on sand.

Wolters Kluwer, *2024 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* 32, 59, 63 (2024) ("2024 Real Rate Report"). The Court finds that these rates are reasonable for this District. *See also, e.g.*, *Guerrero v. SFS Beauty CA LLC*, No. 25-cv-01133-JES-KSC, 2025 WL 2460193, at *5 (S.D. Cal. Aug. 26, 2025) (taking judicial notice of the 2024 Real Rate Report); *Iconic Mars Corp. v. Kaotica Corp.*, No. 22-cv-00092-CAB-DEB, 2025 WL 2440887, at *3 (S.D. Cal. Aug. 25, 2025) (considering 2024 Real Rate Report).

Based on the 2024 Real Rate Report, the Court concludes that the following adjusted rates are reasonable for the Martinezes' counsel:

| Attorney | Law School Graduation Year | California Bar Admission Year | Adjusted Hourly Rate |
|---|---|---|---|
| Kevin Jacobson (Partner) | 2017 | 2018 | $425 |
| Michael Jahangani (Assoc.) | 2023 | 2024 | $235 |
| Gabriel McIntire (Assoc.) | 2024 | 2025 | $225 |
| Erik Schmitt (Assoc.) | 2016 | 2017 | $385 |
| Matthew Treybig (Assoc.) | 2018 | 2021 | $375 |

Using these adjusted hourly rates and the hours reasonably expended on this litigation, the Court finds that the Martinezes are entitled to $6,715.00 in fees, as calculated below.

| Attorney | Adjusted Hours | Adjusted Hourly Rate | Modified Fee |
|---|---|---|---|
| Kevin Jacobson | 0.2 | $425 | $85 |
| Michael Jahangani | 0.6 | $235 | $141 |
| Gabriel McIntire | 3.4 | $225 | $765 |
| Erik Schmitt | 2.4 | $385 | $924 |
| Matthew Treybig | 12.8 | $375 | $4,800 |
| **TOTAL** | **19.4** | | **$6,715** |

## IV. CONCLUSION

The Martinezes are entitled to an award of attorney fees and costs because they prevailed in this action. However, they are not entitled to the requested $18,710.50 in fees and costs. The request for $14,205.00 in fees incurred at the time of filing the motion is based on excessive hours and rates; it is accordingly reduced. The request for $4,000.00 in fees for submitting a reply and attending a hearing is wholly unsubstantiated; it is consequently rejected in whole. The request for $505.50 in costs is undisputed; it is therefore allowed in whole.

Based on the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** the Martinezes' Motion for Attorneys' Fees, Costs, and Expenses in the modified amount of $7,220.50. (Doc. No. 18.)

**IT IS SO ORDERED**.

Dated: November 14, 2025

Hon. Anthony J. Battaglia
United States District Judge